UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICIAN MANAGEMENT, LLC AND NEW ORLEANS NAVY HOUSING, LLC | CIVIL ACTION |
| VERSUS | NO. 22-1487 |
| BXS INSURANCE, INC. | SECTION "L" (2) |

## ORDER AND REASONS

Pending before the Court is Defendant BXS Insurance Inc.'s ("BXS") motion pursuant to Federal Rule of Civil Procedure 12(b)(6), R. Doc. 7, to dismiss claims by Plaintiffs Patrician Management LLC, and New Orleans Navy Housing, LLC's ("Plaintiffs") against it for failure to state a claim upon which relief can be granted. Plaintiff opposes the motion. R. Doc. 10. Having considered the briefing and the applicable law, the Court rules as follows.

### I.   BACKGROUND

This case arises out of an alleged breach of an insurance agent's duty to Plaintiffs Patrician Management, LLC and New Orleans Navy Housing, LLC ("Plaintiffs") by Defendant BXS Insurance Inc.'s ("BXS"). Plaintiffs own and manage the housing units at the Naval Air Station Joint Reserve Base in Belle Chasse, Louisiana and in Federal City in Algiers, Louisiana. R. Doc 1-1 at 2. Plaintiffs allege that they first hired BXS to provide insurance on their properties at some time prior to April 2020. *Id.* From April 23, 2020 through April 23, 2021 BXS provided commercial insurance for Plaintiffs' properties. *Id.* Plaintiffs allege that, under the 2020-2021 policy (hereinafter, "Policy 1") they paid a premium of $1,161,299 based upon an estimated total value of the property of $107,688,973. Under Policy 1, a "Named Storm"

deductible provision was included. *Id.* This provision provided that the deductible would constitute "3% of Total Insurable Value at the time of the loss at each Insured Location involved in the loss or damage." *Id*. Thereafter, Plaintiffs property was damaged by Hurricane Zeta. *Id.* at 3. Plaintiff allege that their deductible for their Zeta claim was calculated to be $3,230,069, or 3% of $107,688,973, which Plaintiffs allege was "amount calculated by the underwriters based on the estimated total value of the property that BXS provided in connection with procuring" their coverage *Id*.

Plaintiffs allege that, sometime before the end of Policy 1, they procured insurance through BXS again for a policy that would be valid from April 23, 2021 through April 23, 2022 (hereinafter, "Policy 2"). *Id.* BXS proposed the inclusion of an additional endorsement to Policy 2, called the "Per Building Deductible Endorsement." *Id.* at 3. Under the endorsement, the following modification was made to the "Named Storm" provision:

**DEDUCTIBLE (APPLICABLE TO NAMED STORM)**

The following provision set forth in Items **8.D.1.** and **8.D.2.** of the Declarations:

"Total Insurable Values at the time of the loss at each **Insured Location** involved in the loss damage"

is deleted and replaced with:

"Total Insurable Values at the time of the loss for each **Building** involved in the loss or damage at each **Insured Location** involved in the loss or damage"

R. Doc. 7-2 at 65. Plaintiffs allege that BXS told them that this endorsement "would be more beneficial in the event of a smaller loss where only some of the buildings at the property locations, rather than all of them, are affected." R. Doc 1-1 at 3. Plaintiffs allege that they selected this option and paid $8,142 in additional premiums for the endorsement. *Id.* Plaintiffs allege that they paid a total premium of $1,290,928, which was based upon an estimated total

value of the property of $112,662,167. *Id.* at 4. Again, they allege that this total value of the property was provided by BXS "in connection with procuring" their coverage. *Id.* at 4

Plaintiffs allege that, on or about August 29, 2021, all—rather than some—of their residential housing units in Belle Chasse and Algiers were damaged by Hurricane Ida. *Id.* at 4. They allege that, rather than calculating the deductible for this claim at 3% of the $112,662,167 estimated value of the property provided by BXS, the underwriters calculated the deductible as 3% of $169,290,581.77. *Id.* Plaintiffs allege that, despite paying an additional $8,142 in premiums for their 2021-2022 policy, the increased valuation of the properties caused their deductible to rise significantly. *Id.* Plaintiffs allege that BXS never "disclose[d] to [Plaintiffs] the basis for the estimated total values of the property it used to procure coverage for each period." *Id.* Further, Plaintiffs allege that the increase in the valuation resulted from the change recommended by BXS, which increased their deductible and reduced the amount received for their covered losses. *Id.*

Plaintiffs claim that BXS breached its duty as an insurance agent when it failed to advise them that "in the event of a loss such as Hurricane Ida, where all of the buildings at both property locations were damaged," they would face a "substantial and significant increase in their deductible over what it would otherwise have been if the 'Per Building Deductible Endorsement' was not added to the policy." *Id.* at 5. Plaintiffs claim that, due to the negligence of Defendant, they are entitled to recover in damages the $1,698,852.55 increase in the deductible. *Id.*

On May 26, 2022, Defendant removed this case to federal court based on diversity jurisdiction. R. Doc. 1 at 1. Defendant subsequently filed its Motion to Dismiss.

## II.    PRESENT MOTION

BXS moves to dismiss all Plaintiffs' claims with prejudice. R. Doc 7; R. Doc. 14. They argue that Plaintiff's fail to allege BXS breached any duty owed by an insurance agent because an insurance agent's "obligation to his client to use reasonable diligence" does not encompass Plaintiffs' claims about their deductibles being higher than expected. *Id*. at 4-6. BXS argues further that Plaintiffs fail to establish a causal connection between the alleged action and damages, because the deductible was based on the value of the property as calculated "at the time of the loss" and Policy 2's Per Building Deductible Endorsement had no effect on the values calculated by the underwriters. *Id*. at 6-8.

In opposition, Plaintiffs contend that their claim is cognizable because BXS breached its duty to them and that this breach of duty caused their injury. R. Doc. 10 at 1. In particular, BXS argues that "an [insurance] agent's duty is much broader than BXS asserts in its motion," and cites a case in which the Fifth Circuit Court of Appeals held that, when an insurance agent "has reason to know the risks against which an insured wants protection" that agent has undertaken to "provide coverage for the client's specific concerns." *Id.* at 8 (citing *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 230 (5th Cir. 1990)). Further, Plaintiffs argue, there is a causal relationship between BXS's actions and their damages because the Per Building Deductible Endorsement "substantially increased the deductible based on the underwriters' new per building calculation" of property value. *Id.* at 16.

## III.   APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v.

4

*Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## IV.    DISCUSSION

BXS argues that the Plaintiffs fail to state a claim against it because, under Louisiana law, there is no cause of action against insurance agents for failing to advise clients about all the possible implications of their insurance policies, including the possibility of a higher deductible. Further, BXS argues, the Plaintiffs fail to state a claim because BXS did not cause Plaintiffs' alleged injury, as it did not calculate the property valuations that ultimately determined Plaintiffs' deductible.

"Where there is an agreement to procure insurance, the Louisiana Supreme Court has observed, the duty of the insurance broker or agent includes a duty of reasonable diligence." *Rodriguez v. Fid. Nat'l Prop. & Cas. Ins. Co.*, No. 13-5927, 2013 U.S. Dist. LEXIS 173410, at *7 (E.D. La. Dec. 11, 2013). Specifically, this duty requires an insurance agent to "use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance." *Geovera Specialty Ins. Co. v. Joachin*, No. 18-7577, 2019 U.S. Dist. LEXIS 120833, at *26 (E.D. La. July 18, 2019). The

agent's duty "has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage." *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 09-2161 (La. 7/6/10), 42 So. 3d 352, 359. Rather, "[i]t is the insured's responsibility to request the type of insurance coverage and the amount of coverage needed." *Id.* The agent has no duty to "spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs." *Id.* The Plaintiffs cite *Offshore Production Contractors v. Republic Underwriters*, a Fifth Circuit opinion from 1990, for the proposition that "proper diligence requires the insurance broker to 'canvass the market' and to be informed about different companies and variations in the available terms . . . The broker should also understand the specific terms of the policy which he is selling." R. Doc. 10 at 8 (citing *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 231 (5th Cir. 1990)).

This Court has considered in detail the question of *Offshore Production*'s applicability after the Louisiana Supreme Court decided *Isidore Newman*, and has determined that *Offshore Production*'s heightened duty for an insurance agent "may still apply when an agent has reason to know that the client had a specific risk or requested coverage for specific circumstances." *Geovera Specialty Ins. Co. v. Joachin*, No. 18-7577, 2019 U.S. Dist. LEXIS 120833, at *29 (E.D. La. July 18, 2019).

In this instance, the Court need not consider whether or not Plaintiffs' needs fell within this potential exception. This is so because Plaintiffs do not plead facts sufficient to infer that BXS caused the injury of which they ultimately complain: having a higher deductible than expected during the 2021-2022 policy year, because the underwriters calculated the property value as having increased significantly. As the Defendant notes in its motion, "The Per Building Deductible Endorsement does not alter how the underwriters appraise the monetary value of the

6

Properties (in whole or in part). That calculation is governed by a different section of the policy that was unchanged by the inclusion of the Per Building Deductible Endorsement." R. Doc. 7-1 at 7. In fact, the Per Building Deductible Endorsement, at R. Doc. 7-2 (Ex. A) at 65, contains no language related to how the underwriters would value the property. This language is contained in a different section of the contract: "Such property will be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence." R. Doc. 7-2 (Ex. A) at 21.

Plaintiffs do not, in their Complaint or in their memorandum in opposition to Defendant's motion, point to any evidence that the Per Building Deductible Endorsement had any effect on the valuation of the property, which Plaintiffs concede was done by the insurance underwriters rather than by Defendant. R. Doc. 10 at 14 n.1. In their Complaint, Plaintiffs allege that the underwriters calculated the property value "based specifically on the 'Per Building Deductible Endorsement,'" R. Doc. 1-1 at 4, and in their opposition to the present motion they argue that the inclusion of the Per Building Deductible Endorsement "clearly changed the calculation of the deductible." R. Doc. 10 at 14.

Taking Plaintiffs' factual allegations to be true, it is evident that the total value of their property, as valued by the underwriters, increased greatly between their 2020-2021 and 2021-2022 policy years. But they do not plead any facts that even suggest how the valuation was changed based on the inclusion of the Per Building Deductible Endorsement, that the underwriters based any part of the valuation on the Per Building Deductible Endorsement, or that Defendant here had any role in the valuation process.

Plaintiffs have taken two facts—that they signed up for the Per Building Deductible Endorsement and that, in the same year, the underwriters increased the valuation of their

property—and speculated that the first fact caused the second. Even if the Court accepts these two individual facts as true, Plaintiffs have not plead any facts that show how BXS, acting as their insurance agent, might have been responsible for the increase in their property value as determined by the underwriters. As such, their complaint does not include facts sufficient "enough to raise a right to relief" against the Defendant named here "above the speculative level." *Twombly*, 550 U.S. at 556. As a result, they have failed to state a claim on which relief can be granted.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED.**

New Orleans, Louisiana, this 31st day of March, 2023.

UNITED STATES DISTRICT JUDGE